Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| P & S CONSULTANTS, LLC<br><br>Peticionaria<br><br>v.<br><br>REDLINE GLOBAL, LLC Y SU AGENTE RESIDENTE SRA. SARIMILA MÉNDEZ, MUNICIPIO DE ARECIBO Y OTROS<br><br>Recurrida | KLCE202401252 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Caso Núm.:<br>DO2021CV00226<br><br>Sobre:<br>Cobro de Dinero e Incumplimiento de Contrato |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de enero de 2025.

El 18 de noviembre de 2024, P & S Consultants, LLC (en adelante, P & S Consultants o peticionario) presentó una *Petición de Certiorari*. En esta, nos solicita que revoquemos la *Resolución* emitida el 9 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón, (en adelante, TPI o foro primario), notificada el 18 de octubre de 2024. Por virtud del aludido dictamen, el foro primario declaró No Ha Lugar la *Moción de Reconsideración* presentada por el peticionario. En consecuencia, ordenó la continuación del descubrimiento de prueba y la toma de deposiciones.

Examinado el expediente y sopesados los argumentos de las partes, **denegamos** expedir el auto solicitado.

I.

El pleito de epígrafe comenzó el 4 de noviembre de 2021, cuando P & S Consultants presentó una *Demanda* sobre incumplimiento de contrato

Número Identificador

RES2025 _____

y cobro de dinero contra Redline Global, LLC (en adelante, Redline o recurrida). En esencia, alegó que, el 31 de julio de 2018, otorgó un *Teaming Agreement* (en adelante, contrato) con Redline en el cual se comprometía a prestar servicios profesionales a esta, para que ambas entidades unieran esfuerzos y trabajaran juntas a los fines de asistirse en labores referentes a contratos que fuesen adjudicados a cualquiera de las partes. Además, arguyó que dicho contrato disponía que, una vez culminado el trabajo y presentada la factura, se tenía que realizar el pago correspondiente. Así pues, adujo que Redline estaba en incumplimiento con el contrato, toda vez que dejó de efectuar el pago según acordado. Sostuvo que la recurrida adeudaba la suma de $266,273.00. A su vez, esbozó que, el 20 de abril de 2019, Redline reconoció que tenía una deuda por la suma de $208,711.00 y, que el 25 de enero de 2021, remitió una factura al agente residente de dicha compañía para cobrar el dinero adeudado. Por último, señaló que, Redline se negó a pagar la cantidad adeudada en incumplimiento con el contrato. Por todo lo anterior, solicitó se ordenara a Redline a pagar la suma de $266,273.00, intereses legales, costas, gastos y honorarios de abogado.

Tras varios trámites procesales, el 30 de junio de 2022, el peticionario presentó su *Demanda Enmendada* a los fines de incluir como demandado al Municipio de Arecibo (en adelante, Municipio) y otros. En lo pertinente, indicó que Redline otorgó un contrato de servicios con el Municipio el 16 de enero de 2018, con el propósito de que Redline optimizara las alternativas de recuperación de dicho Municipio luego del Huracán María. Entiéndase, Redline prestaba servicios al Municipio, con el propósito de que estos obtuviesen fondos pertenecientes a la Agencia Federal para el Manejo de Emergencias (FEMA).

Por su parte, el 9 de agosto de 2022, Redline presentó su *Contestación de Redline Global, LLC a Demanda Enmendada* en la cual negó la mayoría de las alegaciones. Entre sus defensas afirmativas, planteó que, el contrato

suscrito entre Redline y P & S Consultants, fue uno que estaba sujeto al pago por parte del Municipio. Razonó que, debido a que el Municipio no emitió pago alguno a Redline, no se había configurado la obligación de pago por parte de Redline al peticionario. De igual forma, argumentó que la *Demanda Enmendada* adolecía de falta de parte indispensable o interventor, puesto que, en junio de 2018, la compañía Recovery Finance Limited (Recovery) suscribió un contrato con Redline, para otorgarle ciertos préstamos a cambio de la acreencia que tenía como contratista del Municipio. Sostuvo que, dicho acuerdo constituyó una cesión de crédito a favor de Recovery, quien tenía derecho a cobrarle al Municipio el dinero que se le adeudaba al peticionario, por lo que Recovery debía formar parte del pleito.

Así las cosas, el 15 de agosto de 2022, Recovery presentó una *Moción Urgente de Intervención Bajo la Regla 21 de Procedimiento Civil y/o Sustitución de Partes Bajo la Regla 22*. En síntesis, esgrimió que tenía un derecho a intervenir conforme a la Regla 21.1 de Procedimiento Civil, 32 LPRA Ap. V, dado que tenía un interés pecuniario, el cual era susceptible de afectarse de no permitirse su intervención. Advirtió, que de limitar su capacidad de demandar al Municipio y no permitirle que gestionara el pago del dinero adeudado, conllevaría que el contrato de servicios otorgado entre Redline y el Municipio quedaría insatisfecho. Por tanto, puntualizó que Recovery perdería cualquier derecho sobre los activos en posesión del Municipio, los cuales hubiesen sido destinados al pago de los préstamos que Recovery le otorgó a Redline para que esta rindiera sus servicios. Además, enfatizó que procedía su intervención al amparo de la Regla 21.2 de Procedimiento Civil, 32 LPRA Ap. V, toda vez que el pleito principal tenía en común la adjudicación de derechos bajo el contrato de servicios, el contrato de cesión, y, por consiguiente, derecho al dinero consignado en el Municipio en virtud de dichos contratos. En la alternativa, apuntó que procedía la sustitución de

partes de Recovery, puesto que Redline le había cedido el interés de crédito que tenía en contra del Municipio.

Cónsono con lo anterior, el 15 de agosto de 2022, Recovery presentó una *Demanda Jurada Contra Coparte* sobre solicitud de orden de entredicho, injunction preliminar y/o permanente, cumplimiento específico y cobro de dinero en contra del Municipio en la que solicitó que se dictara una orden de entredicho, o, en la alternativa, de injunction, para que estos cumplieran con sus obligaciones, a saber, que realizara las gestiones administrativas a las que se obligó contractualmente para satisfacer, desembolsar y pagar las facturas sometidas, líquidas, vencidas y exigibles de Recovery.

En desacuerdo, el 11 de octubre de 2022, P & S Consultants presentó su *Oposición a Moción Solicitando Sustitución de Parte*. En síntesis, alegó que, la cesión entre Redline y Recovery era para que este último cobrara al Municipio y saldara sus préstamos. No obstante, señaló que dicha cesión no liberaba de responsabilidad a Redline ante el peticionario. Sostuvo que Redline tenía que continuar en el pleito pues tenía una relación contractual con P & S Consultants. De igual forma, apuntó que Redline tenía que responder, toda vez que cedió su acreencia sin notificarlo. Añadió que, Redline tenía que responder por el uso de los fondos obtenidos como resultado de los préstamos millonarios que le hizo a Recovery para costear los servicios profesionales requeridos por el Municipio. Enfatizó que, Redline y Recovery se habían beneficiado de dicha cesión. Por todo lo anterior, razonó que no procedía la sustitución de parte, puesto que Recovery no cumplía con el requisito de que la parte interesada continuara siendo la misma, con relación a la cosa o las personas envueltas en el litigio.[1]

Luego, el 5 de diciembre de 2022, el Municipio presentó su *Moción en Cumplimiento de Orden*. Adujo que, nunca tuvo una relación contractual con

---

[1] El 2 de noviembre de 2022, Recovery presentó su *Réplica a Oposición de P & S Consultants, LLC*. Por su parte, el 20 de noviembre de 2022, P & S Consultants presentó su *Dúplica a Réplica a Oposición a Moción de P & S Consultants, LLC.*

P & S Consultants, por lo que no existía fundamentos para ser parte en el pleito. A su vez, esbozó que Redline era quien tenía una relación contractual con el peticionario. No obstante, alegó que Redline intentaba desviar el enfoque de la deuda incluyendo en el pleito a Recovery. Añadió, que la cesión de crédito no proveía facultades para representar a contratistas o terceros en nombre de Redline. En virtud de lo anterior, expresó que correspondía a Redline responder a P & S Consultants y, que no era oponible a este la intervención o acumulación de parte de Recovery, puesto la reclamación no era contra el Municipio.[2]

Luego de examinar los argumentos presentados por las partes, el 14 de marzo de 2023, el TPI celebró una vista. Surge de la *Minuta* que, Recovery desistió de la petición por intervención. Sin embargo, reiteró que fuera acumulado como parte. De igual forma, P & S Consultants informó que se allanaba a la intervención y, que el único reparo era que sustituyera a Redline. Finalmente, el Municipio reconoció que el rol adecuado para Recovery era la acumulación en el pleito. Cónsono con lo anterior, el foro primario declaró Ha Lugar la petición de intervención como parte acumulada de Recovery y, ordenó la presentación de las enmiendas a las alegaciones. Asimismo, aclaró que existía controversia con relación a que Redline debía una suma de dinero al peticionario.

Conforme ordenado, el 1 de agosto de 2023, P & S Consultants presentó su *Segunda Demanda Enmendada* a los fines de incluir al Municipio de Arecibo y a Recovery y sus alegaciones contra estos. En respuesta, el 2 de octubre de 2023, el Municipio presentó su *Contestación a Segunda Demanda Enmendada* e insistió en negar las alegaciones de la *Segunda Demanda Enmendada*. Al día siguiente, Recovery presentó su *Contestación a Segunda Demanda Contra Coparte Enmendada* en la cual reiteró sus

---

[2] El 7 de diciembre de 2022, Recovery presentó su *Réplica a Moción en Cumplimiento de Orden del Municipio de Arecibo*.

planteamientos iniciales y negó la mayoría de las alegaciones. Adujo que, el Municipio no acordó ni aceptó la cesión.

Luego, el 3 de octubre de 2023, el Municipio presentó una *Moción de Desestimación*. Alegó que, no otorgó un contrato con P & S Consultants, por lo que no existía relación contractual con este. Sostuvo, que el peticionario únicamente otorgó un contrato con Redline. De otra parte, resaltó que el argumento sobre enriquecimiento injusto no era oponible al Municipio, toda vez que no existía una relación contractual que lo vinculara con el peticionario. Por lo tanto, solicitó se desestimara la *Demanda Enmendada*.

Lugo de examinar los argumentos presentados por las partes, el 21 de diciembre de 2023, el TPI emitió una *Resolución* que se notificó 22 de diciembre de 2023, en la cual determinó lo siguiente:

> A petición de desestimación de Demanda Demandada presentada por el codemandado Municipio de Arecibo: sin lugar. Demanda de Intervencion de Recovery Finance Limited, la cual no fue objetada por el promovente en autos, permite que reclamación contra el Municipio de Arecibo por parte del demandante P & S Consultants, LLC., sea tratada como una contingente a la reclamación de este contra Redline Global, LLC, y Recovery, por consiguiente, al este último tener un crédito contra Redline Global, LLC. Teniendo Recovery (acreedor de Redline), una reclamación contra el Municipio de Arecibo, se permite persista en autos tal reclamación, la cual quedaría desestimada de la reclamación original no probarse (P & S Consultants, LLC., v. Redline Global, LLC.).

Así las cosas, el 4 de agosto de 2024, P & S Consultants presentó una *Moción de Paralización para Desautorizar la Intervención de Recovery Finance Limited, Eliminar y/o Desglosar la Primera y Segunda Demanda Contra Coparte, Solicitud de Descalificación y para la Imposición de Honorarios de Abogados.* Señaló que, la intención de incluir a Recovery como parte indispensable era para que este demandara al Municipio con el propósito de cobrar los préstamos que realizó a Redline. Ello, sin importar si el peticionario cobraba o no. De igual forma, argumentó que la *Segunda Demanda contra Coparte* de Recovery contra el Municipio, era otro pleito con hechos distintos e independiente del pleito de epígrafe. Por último, enfatizó que Redline y Recovery estaban siendo representados por los mismos abogados lo cual

implicaba una violación a los cánones 21 y 38 de los Cánones de Ética Profesional. Por ende, razonó que procedía la descalificación de dichos abogados que habían comparecido como sus representantes legales. Conforme lo anterior, solicitó desautorizar la intervención de Recovery; eliminar y desglosar las *Demandas contra Coparte*; descalificar a los abogados que habían comparecido al pleito representando a Redline y a Recovery, así como al bufete McConnell Valdés, LLC e; impusiera a Redline y a Recovery sanciones y el pago de honorarios de abogado.

Luego de examinar la moción presentada por el peticionario, el 5 de agosto de 2024, el foro primario celebró una vista. En esta, el Tribunal expresó que el caso había tomado más tiempo de lo esperado, por lo que eventualmente se podían bifurcar los procedimientos y paralizar todo lo relacionado a la causa de acción entre Recovery y el Municipio. A su vez, indicó que no estaba claro con relación a la alegación de conflicto de intereses. En virtud de lo anterior, el foro primario paralizó los procedimientos y, concedió a Recovery veinte (20) días para contestar la moción presentada por el peticionario. Además, postergó el descubrimiento de prueba.[3]

En desacuerdo, el 21 de agosto de 2024, Recovery presentó su *Oposición a Moción de Paralización, Desglose e Imposición de Honorarios Presentada por P&S Consultants LLC*. Arguyó que, la intervención de Recovery fue avalada por todas las partes en la vista que se celebró el 14 de marzo de 2023, y que dicha intervención era meritoria pues Recovery adquirió el crédito que Redline tenía en contra del Municipio. Ello, con el propósito de cobrar el dinero que el Municipio adeudaba por las labores que Redline y el peticionario rindieron y, por las cuales P&S Consultants,

---

[3] El 12 de agosto de 2024, P & S Consultants presentó su *Moción Para Suplementar Moción De Paralización Para Desautorizar la Intervención de Recovery Finance Limited, Eliminar y/o Desglosar la Primera y Segunda Demanda Contra Coparte, Solicitud de Descalificación y Para la Imposición de Honorarios de Abogado/a* a los fines de presentar evidencia adicional para apoyar sus alegaciones.

estaba reclamando a Redline y a Recovery. Por otro lado, alegó que había demostrado que su único interés en el pleito era cobrar al Municipio por los servicios que Redline y P & S Consultants habían rendido bajo el contrato de servicios. Específicamente, indicó que el acuerdo entre Redline y el peticionario era uno *pay when paid*, por lo que el peticionario iba a cobrar su acreencia cuando lograra cobrar del Municipio. De igual forma, expresó que ninguna de las cláusulas del contrato de cesión y el contrato de financiamiento surgía que la intención de Recovery era retirarse del pleito una vez cobrara del Municipio.

De otra parte, puntualizó que el peticionario era quien dilataba los procedimientos negándose a la toma de deposiciones y solicitando paralizaciones. Planteó, que la representación de Redline y Recovery por el buefete McConnell Valdés no presentaba ningún conflicto entre las partes, pues el interés era el mismo. Entiéndase, cobrar la acreencia cedida a Recovery para así distribuir los fondos a P&S Consultants y liberar a Redline y a Recovery de cualquier reclamación futura. Por último, enfatizó no procedían los honorarios de abogado, toda vez que Redline y Recovery no ocultaron información relevante en el pleito y, tampoco indujeron a error al Tribunal para atrasar los procedimientos o litigar de mala fe.[4]

Examinados los escritos de las partes, el 20 de septiembre de 2024, el TPI emitió una *Orden* que se notificó el 23 de septiembre de 2024, en la cual declaró No Ha Lugar la *Moción de Paralización para Desautorizar la Intervención de Recovery Finance Limited, Eliminar y/o Desglosar la Primera y Segunda Demanda Contra Coparte, Solicitud de Descalificación y para la Imposición de Honorarios de Abogados.* En consecuencia, ordenó la continuación el descubrimiento de prueba.

---

[4] El 10 de septiembre de 2024, el peticionario presentó su *Réplica a Oposición de la Moción de Paralización, Desglose, Solicitud de Descalificación e Imposición de Honorarios Presentada por P & S Consultants, LLC*. Por su parte, el 19 de septiembre de 2024, Recovery presentó su *Dúplica a Réplica a Oposición de la Moción de Paralización, Desglose, Solicitud de Descalificación e Imposición de Honorarios*. Ambas partes reiteraron sus planteamientos iniciales.

Insatisfecho, el 4 de octubre de 2024, el peticionario presentó su *Moción de Reconsideración* en la cual reiteró sus planteamientos iniciales. Además, alegó que el TPI fue inconsistente con las expresiones vertidas en la vista celebrada el 5 de agosto de 2024. A su vez, esgrimió que descartó la evidencia demostrativa presentada. De igual forma, arguyó que se violentó su derecho a una compensación justa y, que tanto Redline como Recovery no estaban cobrando las facturas adeudadas de P & S Consultants.

Así las cosas, el 9 de octubre de 2024, el foro primario celebró una vista. Mediante esta, el TPI declaró No Ha Lugar la *Moción de Reconsideración*.[5] Además, determinó lo siguiente:

> Se le concedió a la licenciada Figueroa 10 días para informar la calendarización de las deposiciones.
> Se concedió a los abogados hasta el 15 de febrero de 2024 para culminar deposiciones y el descubrimiento de prueba.
> Se señaló Vista de Seguimiento para el 21 de febrero de 2025 a las 8:45 a.m. mediante videoconferencia.

Inconforme, P & S Consultants instó el recurso de epígrafe y, señaló la comisión de los siguientes errores:

> Erró el TPI al no desautorizar la intervención de Recovery y negarse a desautorizar y desglosar las demandas de coparte del recurrido Recovery, contradiciendo su propio dictamen en la minuta del 5 de agosto de 2024, incurriendo así en un error craso y manifiesto en la apreciación de la prueba documental incontrovertida en autos.
>
> Erró el Tribunal de Primera Instancia al no imponer sanciones a los tres abogados que han comparecido al pleito representando simultáneamente a Redline y a Recovery bajo la Regla 9 de las de Procedimiento Civil.
>
> Erró el Tribunal de Primera Instancia al no descalificar a los tres abogados que han comparecido al pleito representando simultáneamente a Redline y a Recovery, así como al bufete McConell Valdés, LLC por existir un conflicto de intereses entre Redline y Recovery.
>
> Erró el Tribunal de Primera Instancia al no imponer a Redline y Recovery, las sanciones que en derecho procedan y el pago A P & S de los honorarios de abogado a tenor con lo dispuesto en la Regla 44.1 (D) de Procedimiento Civil.

---

[5] La *Minuta* se notificó a las partes el 18 de octubre de 2024.

Atendido el recurso, el 21 de noviembre 2024 emitimos una *Resolución* en la que concedimos a la parte recurrida un término de diez (10) días para presentar su posición. No obstante, el 25 de noviembre de 2024, la parte recurrida presentó una *Prórroga para Presentar Oposición a Expedición de Certiorari*, puesto que la representación legal de la parte recurrida tenía vacaciones fuera de la jurisdicción. Conforme lo anterior, el 3 de diciembre de 2024, le concedimos a la parte recurrida hasta el 16 de diciembre de 2024, para comparecer y exponer su posición. Luego, el 10 diciembre de 2024, P & S Consultants presentó una *Moción Urgente en Auxilio de Jurisdicción* mediante la cual nos suplicó la paralización del descubrimiento de prueba en el caso de epígrafe, toda vez que dicha prórroga afectaría la toma de deposiciones previamente calendarizadas. Sostuvo que dichas deposiciones dependían de la determinación del recurso. Mediante *Resolución* emitida el 10 de diciembre del año en curso, declaramos Ha Lugar la solicitud de auxilio. Posteriormente, el 12 de diciembre de 2024, la parte recurrida presentó su *Oposición a Petición de Certiorari*.

Con el beneficio de la comparecencia de todas las partes, damos por sometido el asunto y procedemos a resolver.

II.

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. Rivera et al. v. Arcos Dorados et al., 212 DPR 194, 195 (2023) al citar a McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021) y otros. La característica distintiva del recurso de certiorari descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Medina Nazario v. McNeil Healthcare LLC, 194 DPR

723, 729 (2016). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd.*

Ahora bien, en los procesos civiles, los preceptos que regulan la expedición de un auto de *certiorari* se encuentran en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. Rivera et al. v. Arcos Dorados et al., *supra,* a la pág. 207-208. La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." *Íd.*

El examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. 800 Ponce de León v. AIG, 205 DPR 163 (2020). Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Los criterios previamente transcritos pautan el ejercicio sabio y prudente de la facultad discrecional judicial. Mun. de Caguas v. JRO Construction, 201 DPR 703, 712 (2019). La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación." Scotiabank v. ZAF Corp. et al., *supra*, págs. 486-487; Mun. De Caguas v. JRO Construction, *supra*.

III.

Por virtud del recurso de epígrafe, P & S Consultants impugna la *Resolución* emitida por el TPI el 9 de octubre de 2024, notificada el 18 de octubre de 2024, en la cual declaró No Ha Lugar la *Moción de Reconsideración* presentada por el peticionario. Específicamente, el peticionario reclama que el TPI erró al no desautorizar la intervención de Recovery y negarse a desglosar las demandas contra coparte de Recovery, incurriendo así en un error craso y manifiesto error en la apreciación de la prueba documental incontrovertida en autos. De igual forma, plantea que el foro primario incidió al no imponer sanciones y descalificar a los abogados que han comparecido al pleito representando simultáneamente a Redline y a Recovery, así como a su bufete McConell Valdés, LLC. Ello por existir un conflicto de intereses entre estos. Por último, señala que el TPI erró al no imponer a Redline y Recovery, las sanciones y el pago de honorarios de abogado a tenor con lo dispuesto en la Regla 44.1 (D) de Procedimiento Civil, 32 LPRA Ap. V.

Recurriéndose pues de la denegatoria de una moción de carácter dispositivo, estamos facultados, conforme a lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, para revisar esta determinación mediante un

recurso de *Certiorari*. Ahora bien, examinado el legajo apelativo, no vemos que el TPI haya errado en su proceder. A su vez, no identificamos presente alguno de aquellos factores enunciados en la Regla 40 de nuestro Reglamento para determinar la expedición del auto discrecional del *certiorari*. No nos parece que la decisión recurrida sea contraria a derecho, ni que en esta haya mediado prejuicio, parcialidad por parte del TPI, que la expedición del auto evite el fracaso a la justicia, o cualquiera de los otros elementos mencionados por la Regla 40. Al ser ello así, merece nuestro respeto.

Es menester señalar que la denegatoria del recurso discrecional de *certiorari* no prejuzga los méritos de la controversia que en este se plantea. Entiéndase pues, que cuando se deniega un auto de *certiorari* no se resuelve implícitamente cuestión alguna contra la parte promovente de este, a los efectos de cosa juzgada. La resolución denegatoria simplemente es índice de la facultad discrecional del Tribunal para negarse a revisar, en determinado momento, una decisión emitida por un tribunal de instancia. Siendo ello así, estas controversias pudieran ser reproducidas nuevamente mediante el correspondiente recurso de apelación. *Véase*, Pueblo v. Cardona López, 196 DPR 513 (2016).; García v. Padró, 165 DPR 324 (2005).; Núñez Borges v. Pauneto Rivera, 130 DPR 749, 755-756 (1992).

Conforme adelantamos, procede denegar el auto de *certiorari*, y devolver el asunto al Tribunal de Primera Instancia para la continuación de los procedimientos. A su vez, dejamos sin efecto la paralización del caso.

IV.

Por todo lo antes consignado, **denegamos** expedir el auto de *certiorari* y dejamos sin efecto la paralización de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones